UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FILED
JUN 2 2 2005

| | | |
|---|---|---|
| MARILYN PARKER, | \* | CIV 03-3027 |
| Plaintiff, | \* | |
| -vs- | \* | MEMORANDUM OPINION AND ORDER |
| UNITED STATES OF AMERICA, | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Marilyn Parker ("Parker") was bitten by a dog on October 20, 2001, in Mission, South Dakota, while on the grounds of housing units owned and maintained by the Bureau of Indian Affairs ("BIA"). Parker's complaint states a cause of action under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 2671, et seq. Parker claims that the BIA and its employees were negligent in failing to monitor its property, failing to take reasonable action when having knowledge of a dangerous condition, failing to remove the dog from its property, failing to post warnings of a dangerous dog on its property, failing to require that the dog be kept away from persons in the area, failing to enforce its rules and regulations pertaining to dangerous conditions on its premises, and failing to protect individuals on the property. Parker claims that this negligence caused her to suffer temporary and permanent bodily and mental injury, pain and suffering, loss of income, impairment of earning capacity, cosmetic injury, and medical bills.

Defendant counters that it owes no duty to protect Parker from the actions of its tenant's daughter's dog simply because it owns the property. Defendant also takes the position that the defense of assumption of risk or Parker's own negligence bars recovery. The Court granted a partial summary judgment to the effect that the defendant is not derivatively liable for the omissions and commissions of the tenant or the owner of the dog. Trial to the Court on the remaining issues of liability and damages commenced on June 16, 2005.

1

## FINDINGS OF FACT

1. On the morning of October 20, 2001, between 6:00 and 7:00 A.M., Parker and Carol Buchanan ("Buchanan") were at a rummage sale at Buchanan's house. This house was located within the federal quarters complex in Mission, South Dakota (hereinafter "Mission Quarters"), which includes 28 houses and four apartments for a total of 32 units.

2. On the same date, Vina Roan Eagle ("Roan Eagle"), a neighbor to the Buchanans who also lived in the Mission Quarters, was also having a rummage sale. Roan Eagle's house is located northwest of Buchanan's house. The two homes are separated by unfenced backyards. Next door to the east of the Roan Eagle house is the Hawk Wing house. Joann Young's house is next door to the Hawk Wing house. The Young house is directly north of Buchanan's house.

3. Parker's daughter, Monique Wilson ("Wilson"), was also at the Buchanan residence. At some point in the morning, Wilson told her mother that she was leaving to go uptown to get some coffee.

4. After Wilson left, Buchanan and Parker decided to go to the Roan Eagle rummage sale. They selected a diagonal route and proceeded northwest from the back of the Buchanan house to the Roan Eagle house, as it was the most direct route from the Buchanan house to the Roan Eagle house.

5. As they walked across the backyards, Parker and Buchanan could see dogs chained at the back of the Roan Eagle residence during most of their journey. They could also hear the dogs barking. Buchanan knew that the Roan Eagles had dogs, understood that they were "watchdogs," and that it was a bad idea to get close to them. Parker testified that Buchanan had told her that there were "mean dogs" over at Roan Eagles, and, as a result, she did not want to walk too closely to them.

6. As Parker and Buchanan drew close to the Roan Eagle residence, they chose a path close to the west side of the neighboring Hawk Wing residence (the house immediately to the east of Roan Eagle's). By doing so, they hoped to remain out of the reach of the Roan Eagles' dogs which they had observed tied up in the Roan Eagle backyard. Other routes of access were readily available to Parker and Buchanan. There were no physical barriers to prevent Parker and Buchanan from walking between the Hawk Wing house and the Young house. They also could

2

have walked to Avenue B in order to avoid the area between the Hawk Wing and Roan Eagle houses where the dogs were.

7. Buchanan walked in front of Parker in single file as they walked. The Roan Eagle and Hawk Wing houses are separated by approximately 28 feet of lawn. A Roan Eagle vehicle was parked on the lawn between the two houses.[1] As Parker walked between the vehicle and the Hawk Wing house, she could no longer see the dogs. At that point, a dog chained at the front of the Roan Eagle residence came under the vehicle and bit her left hand and left leg. Parker struggled to get away, eventually pulling free.

8. After Parker was bitten by the dog, Wilson pulled up to the front of the Roan Eagle house in her car and observed that Parker was crying and had blood all over her hand. Parker then got into the car and went to the Mission medical clinic.

9. Parker sustained a tear of her left lateral hand and a bruise on her leg. The wound was cleaned and bandaged and Parker was given a tetanus shot and antibiotics. Parker had to return three times to have the bandages changed. The scarring on her hand stings and itches during cold weather. Parker missed one week of work and had to take sick leave.

10. The dog that attacked Parker was a yellow female Malemute Huskie, German Shephard and Chow mix named "Cuddles." Cuddles was tied to a metal trash bin attached to the side of the Roan Eagle house. Cuddles was owned by Vina Roan Eagle's daughter, Natalie. At least one other dog, "Chuckie," was tied up in the rear of the house. Cuddles was tied up with a 15 foot leash, which, given the location of the trash bin to which he was tied, barely enabled it to

---

[1] The testimony varied on the type of vehicle and its location. Parker testified at trial that the dog came out from under a "van." In her statement to the Rosebud police officer, Parker described the vehicle as a "truck." Roan Eagle testified that it was a 1989 Chevy Silverado pickup that was parked about two feet from the Roan Eagle house. Roan Eagle also testified that it was her opinion that Parker was on the Roan Eagle property when she was bitten. This testimony was contrary to the testimony of Parker and Buchanan, which seemed to indicate that the vehicle was entirely on the Hawk Wing property. Plaintiff's Exhibit 8, which includes pictures of the front and back of the Roan Eagle and Hawk Wing houses and drawings made by plaintiff's counsel, suggests that the "van" was very close to the Hawk Wing house. Plaintiff's Exhibit 9, a drawing created by plaintiff's investigator, suggests the same. Neither drawing has any credibility as to the location of the parked vehicle. It also makes no sense to think that the Roan Eagles would park their vehicle on the neighbor's lawn.

3

reach the edge of the Hawk Wing property. There is no evidence of the width of the parked vehicle. After the incident, Cuddles was euthanized.

11. Prior to October 20, 2001, Cuddles had not bitten anyone and was not known to be a potential danger. Joann Young, Rosebud Agency Superintendent from 1999 to February of 2005, was the official in charge of the BIA Mission Quarters at the time of this incident. No complaints were ever made about the Roan Eagles' dogs to Young, her subordinates, or the police department prior to the incident on October 20, 2001.

12. Young lived two houses to the east of the Roan Eagles. The Rosebud Agency Policy Statement in force dictates that pets are "permitted if kept under control by owner," and "all dogs are to be kept on a leash." Young testified that the Roan Eagle dogs were always leashed. Neither Young nor anyone else on behalf of the BIA had any knowledge of any previous problems with the Roan Eagles' dogs.

## CONCLUSIONS OF LAW

1. The United States may be found liable for certain tortious acts pursuant to 28 U.S.C. § 2674, a limited waiver of the government's sovereign immunity. The law of the state where the alleged acts or omissions occurred defines the plaintiff's substantive tort rights under the FTCA. 28 U.S.C. § 1346(b). The substantive law of South Dakota governs this action because plaintiff's tort claims arise from an incident which happened in South Dakota. *Id.*

2. "Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury." Zarecky v. Thompson, 2001 SD 121, ¶ 17, 634 N.W.2d 311, 316 (*quoting* Peterson v. Spink Electric Co-op., 578 N.W.2d 589, 591 (S.D. 1998)). Parker must show, by a preponderance of the evidence, that the BIA owed her a duty, that the BIA breached that duty, and that the BIA's actions proximately caused damage to her. The question of the existence of a legal duty is a threshold question which is a matter of law for the Court to decide.

3. South Dakota follows the common law rule that "a landlord, having parted with full possession of the premises to the tenant is not liable for injury to third persons caused by the tenant's negligence." Heppler v. Thomson Newspapers, Inc., 105 F.3d 1212 (8th Cir. 1997) (*citing* Clauson v. Kempffer, 477 N.W.2d 257, 259 (S.D.1991)). *See also* Wilson v. Marchiondo, No. 03CA1263, 2005 WL 774404 (Colo. App. April 7, 2005) (landlord was not "person in

4

possession" of rented property under premises liability statute, and thus did not owe duty of care to child who was bitten by a dog while playing in the backyard of a rented home).

4. The Roan Eagles took possession of their home in 2000 and were entitled to possession and control of their home to the exclusion of the BIA. *See* 52A C.J.S. Landlord & Tenant § 692 (2004).

5. An exception to the common law rule followed by South Dakota exists where an undisclosed dangerous condition exists at the time the lease is entered into which condition the lessor knew or should have known to exist. *See* Clauson, 477 N.W.2d at 259 (*citing* Restatement (Second) of Torts § 358). This exception does not apply here, as the evidence at trial demonstrated that the BIA had no knowledge of the claimed dangerous condition. No complaints were ever made about the Roan Eagles' dogs to Rosebud Agency Superintendent Young, her subordinates, or any other BIA official prior to the incident on October 20, 2001.

6. Because Parker has failed to demonstrate that the BIA had any knowledge of the dangerous condition about which she complains, she has failed to sustain her burden of proof and judgment should be entered for defendant.

The forgoing constitutes the Court's findings of facts and conclusions of law required by Fed. R. Civ. P. 52(a).

## ORDER

Based upon the foregoing findings of fact and conclusions of law, Judgment shall be entered by the Clerk of Courts in favor of the defendant without costs.

Dated this 22nd day of June, 2005.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY _____
            DEPUTY
      (SEAL)

5